*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ELIS NELSON ORTIZ-NIEVES,

        Defendant-Appellant.

UNPUBLISHED
November 21, 2019

No. 342256
Kent Circuit Court
LC No. 17-007846-FC

Before: MURRAY, C.J., and MARKEY and BECKERING, JJ.

PER CURIAM.

Defendant, Elis Nelson Ortiz-Nieves, appeals as of right from his jury trial convictions of one count of felony murder in violation of MCL 750.316(b), and one count of first-degree child abuse in violation of MCL 750.136b(2). The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to life imprisonment with no possibility of parole for the felony murder conviction, and 80 to 150 years' imprisonment for the first-degree child abuse conviction. This case arises from the death of the minor victim, Giovanni Mejias (Giovanni), the son of defendant's girlfriend, Sonja Hernandez.[1]

In support of reversal, defendant argues that (1) trial counsel was ineffective for not calling several witnesses who would have provided exculpatory testimony, and for failing to introduce certain exculpatory evidence; (2) trial counsel was ineffective for not obtaining expert testimony contradicting the prosecution's expert witness; (3) trial counsel was ineffective for failing to effectively cross-examine the prosecution's expert witness; (4) trial counsel was ineffective for failing to effectively cross-examine the victim's sibling, D; (5) trial counsel was ineffective for not obtaining an independent medical examination; (6) the prosecution violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by failing to provide complete hospital records, microscopic slides, x-rays, hospital admission records, and a

---

[1] There were three other children living with Hernandez and Giovanni at the time of the incident. They will be referred to as A, B, and D.

pathology report essential for impeachment purposes; (7) the trial court abused its discretion by admitting the testimony of the prosecution's expert witness because that testimony "was based on junk science," and was highly prejudicial; and (8) the trial court abused its discretion by admitting evidence of defendant's past episodes of domestic violence and violence toward children under MRE 404(b). We find no merit in any of these contentions, and affirm.

## I. INEFFECTIVENESS OF COUNSEL

## A. STANDARD OF REVIEW

"This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial." *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). "An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions." *Id.* at 279. "The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "This Court reviews de novo whether defense counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and whether, without the error, the result of the proceedings would have been different." *People v McFarlane*, 325 Mich App 507, 527; 926 NW2d 339 (2018). When the trial court does not conduct a *Ginther*[2] hearing, this Court's review "is limited to mistakes that are apparent on the record." *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018) (quotation marks and citation omitted).

## B. DISCUSSION

## 1. FAILURE TO CALL WITNESSES

Defendant argues that his trial counsel was ineffective for failing to investigate and secure testimony from seven or more individuals who could have testified concerning D's penchant for violence. More specifically, defendant alleges that these potential witnesses could have provided testimony showing that D was the aggressor, and caused Giovanni's death by assaulting him several days before. Defendant also argues that his trial counsel was ineffective for not obtaining expert testimony contradicting the prosecution's expert witness. We conclude that the trial court did not err in denying a *Ginther* hearing on whether defendant's trial counsel provided ineffective assistance of counsel by failing to call one or more of the several identified witnesses at trial. We consider each proposed witness in turn.

"When a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record." *People v Bauder*, 269 Mich App 174, 193; 712 NW2d 506 (2005), overruled in part on other grounds by *People v Burns*, 494 Mich 104, 112; 832 NW2d 738 (2013). In cases where the trial court does

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

not hold an evidentiary hearing, if the defendant "set[s] forth any additional facts that would require development of a record to determine if defense counsel was ineffective," a remand to the trial court for an evidentiary hearing is appropriate. *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007). As a general matter, "[t]rial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Trial counsel's failure to call a witness is presumed trial strategy, and constitutes ineffective assistance of counsel only where it deprives a defendant of a substantial defense. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *Chapo*, 283 Mich App at 371 (quotation marks and citation omitted).

First, defendant argues that Giovanni's grandmother, if testifying truthfully, would have testified that D had been expelled from school for property destruction and violent behavior, and that D's issues preceded defendant's involvement with the family. We see no reason why this proffered testimony would have made any difference at trial, as trial counsel was able to elicit Hernandez's admission that D had been expelled from school, and had previous physical altercations with Giovanni. Moreover, because she was unwilling to cooperate with appellate counsel, there is no factual predicate in the record beyond appellate counsel's own self-serving affidavit for concluding that the grandmother's testimony would have been helpful to the defense. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (the defendant has the burden to establish the factual predicate for a claim of ineffective assistance of counsel).

Second, defendant submits an affidavit from Melissa Avalos, defendant's neighbor, in which she states that she often observed D hit Giovanni and, on one occasion, when she asked D why he did that, D responded, "I can hit him if I want to, my Dad said he is not my brother; he is a bastard child and I can kill him." Avalos further stated that D hit other children, had a reputation for violence, his school had suspended him for fighting, A had told Avalos that she believed D killed Giovanni, and trial counsel never contacted her, even though she requested that he do so, and confronted him concerning his lack of contact at the courthouse.

Because defendant acknowledges that trial counsel was fully aware of Avalos, we can presume that trial counsel's decision not to call her as a witness amounted to trial strategy. See *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) ("[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight.") (quotation marks and citation omitted). In any event, as the prosecution argues, other trial witnesses already provided testimony as to D's history of violence, which was not in dispute. Likewise, Avalos's testimony concerning the alleged statements of D and A was inadmissible hearsay.[3] And A's purported "belief" was not relevant, especially given that she testified at trial that she did not see who injured Giovanni. "A witness may not testify to a matter unless evidence is introduced sufficient

---

[3] "In general, hearsay—an out-of-court statement offered to prove the truth of the matter asserted—may not be admitted into evidence." *People v Green*, 313 Mich App 526, 531; 884 NW2d 838 (2015), citing MRE 801 and MRE 802.

to support a finding that the witness has personal knowledge of the matter." MRE 602. There is no reason to conclude that this proposed testimony would have changed the outcome at trial. See *Chapo*, 283 Mich App at 371

Third, defendant argues that trial counsel should have called Hernandez as a defense witness because, if she had testified truthfully, she would have testified that pictures of Giovanni taken close to his death show him without any bodily marks or bruises, and that a video existed documenting Giovanni stating that D hit him. Defendant fails to acknowledge that Hernandez did, in fact, testify at trial, and admitted that D had anger issues, and a history of violence toward his brother. Additional evidence pointing to D's anger issues and history of violence would have been merely cumulative. Moreover, because the forensic pathologist testified that Giovanni's fatal injury likely occurred only minutes before the 911 call, the photographs were not likely to change the outcome of trial. See *Chapo*, 283 Mich App at 371.

Fourth, defendant raises the possibility that the children's therapist could have testified that that he believed that the children were "coached" by their biological father, and the therapist's testimony would have impeached the children's testimony about defendant's abusive conduct. However, this proposed testimony would have been largely inadmissible. Under MRE 602, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." As explained by our Supreme Court, "[u]nder ordinary circumstances a witness is to be restricted to facts within his personal knowledge, and his opinion or conclusion with respect to matters in issue, or relevant to the issue, may not be received in evidence." *Dudek v Popp*, 373 Mich 300, 305; 129 NW2d 393 (1964). This rule obviates "[t]he danger involved in receiving the opinion of a witness . . . that the jury may substitute such opinion for their own." See *id*. at 305-306. Moreover, "to prevent the routine disclosures that would undermine therapeutic relationships," what a patient tells to a therapist is considered privileged. *People v Stanaway*, 446 Mich 643, 678; 521 NW2d 557 (1994). Although the privilege is not absolute, defendant does not provide any legal argument for piercing the privilege under these circumstances. Therefore, we conclude that defendant insufficiently briefed this argument, and we decline to consider it. See *People v Williams*, 228 Mich App 546, 558; 580 NW2d 438 (1998) ("a party may not announce a position and leave it to [this Court] to discover and rationalize the basis for the claim.").

Fifth, defendant suggests that two additional witnesses, Lewanda Vaughn and Sandra Carpenter, could also have testified that D acted violently toward Giovanni, and likely could have caused his fatal injury. Again, because trial counsel already presented evidence to this effect at trial, we conclude that there was no probability of the trial concluding differently had either of these witnesses testified.[4] See *Chapo*, 283 Mich App at 371.

---

[4] Additionally, defendant argues that unnamed former coworkers of Hernandez could have testified that they personally observed her physically abusing Giovanni. Defendant did not provide any sort of affidavit or evidence supporting this assertion, see *Hoag*, 460 Mich at 6, and has not established a basis for an evidentiary hearing or new trial, see *Chapo*, 283 Mich App at 371.

-4-

Sixth, defendant argues that his trial counsel was ineffective for not seeking out an expert witness to counter the prosecution's expert witness. "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *Payne*, 285 Mich App at 190. Moreover, "irrespective of whether defense counsel's decision concerning whether to retain independent experts was proper trial strategy," a defendant cannot obtain relief by merely speculating that "the retention of an independent expert would have altered the outcome of the lower court proceedings." *Id*. To that end, "effective counsel need not always provide 'an equal and opposite expert.'" *People v Carll*, 322 Mich App 690, 702; 915 NW2d 387 (2018), quoting *Harrington v Richter*, 562 US 86, 111; 131 S Ct 770; 178 LEd2d 624 (2011).

Defendant acknowledges that he does not know whether an expert would have had any relevant testimony to provide, but he suggests that an evidentiary hearing could provide an opportunity "to gather testimony," and conduct further investigation. Defendant's speculation that a defense expert may have altered the outcome of his trial is not a basis for obtaining relief. See *Payne*, 285 Mich App at 190. Moreover, the record reveals that defense counsel strategically chose not to discredit Dr. James Henry, but rather to use his expertise—as the prosecution's witness—as a means of discrediting the testimonies of A, B, and D, each of which had been extremely damaging because those children separately testified that defendant had been abusive to Giovanni. "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *Carll*, 322 Mich at 702 (quotation marks and citation omitted). Defendant has not overcome the presumption that it was sound trial strategy to rely on the prosecution's expert witness as a means of discrediting damaging testimony from other witnesses.

The trial court did not err in denying a *Ginther* hearing on whether defendant's trial counsel provided ineffective assistance of counsel by failing to call additional witnesses at trial.

## 2. FAILURE TO ADEQUATELY CROSS-EXAMINE

Defendant questions the efficacy of defense counsel's cross-examination of Dr. Henry, which was limited to eliciting Dr. Henry's acknowledgment, as he had testified during direct examination, that "abuse is often wrapped in secrecy and fear," and it is "uncommon" for one sibling to talk to another sibling about abuse. During closing arguments, defense counsel relied on the testimony of Dr. Henry to attempt to persuade the jury that the testimonies of A, B, and D that defendant had been abusive were untruthful. Again, "[t]he questioning of witnesses is presumed to be a matter of trial strategy." *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). Although defense counsel's cross-examination of Dr. Henry was short, and did not actively seek to discredit his testimony, it is apparent from the record that defense counsel strategically chose not to discredit Dr. Henry, but rather to use his own expertise—and status as the prosecution's witness—as a means of discrediting the testimonies of A, B, and D. Unsuccessful trial strategy does not amount to ineffective assistance of counsel. *Carll*, 322 Mich App at 702 (quotation marks and citation omitted).

It is also argued that trial counsel's examination of D was ineffective because the defense theory focused on the possibility that D caused his brother's death, yet trial counsel did not aggressively cross-examine D. In support of this theory, defendant emphasizes the testimony of Hernandez and the other children, who all acknowledged that D often hurt Giovanni, and had a

history of violence and anger issues. Defendant contends that more effective cross-examination of D "was essential to support the defense theory of the case." Defendant's argument is short and cursory, and does not suggest what questions went unasked, or how defense counsel should have differently approached this particular cross-examination. The argument is abandoned as inadequately briefed. See, e.g., *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006). Even on the merits, we discern no error. "The questioning of witnesses is presumed to be a matter of trial strategy." *Petri*, 279 Mich App at 413. The prosecution argues that trial counsel's decision not to ask an ultimate question was both strategic and reasonable because it is rarely a wise decision to seek a murder confession on the witness stand, especially from a 10-year-old child. We agree that trial counsel's strategy was reasonable, even if it did not achieve the intended objective. See *Carll*, 322 Mich App at 703.

### 3. FAILURE TO OBTAIN INDEPENDENT MEDICAL EXAMINATION

Defendant's argument that an independent medical examination could have provided an alternative and nonincriminating explanation for the injuries on Giovanni's body is highly speculative. Defendant argues only that "[a]n independent medical exam by a competent independent medical examiner could possibly have provided alternative explanations for the injuries on the child's body." Defendant acknowledges that his trial counsel consulted with Dr. Daniel Spitz, who found nothing wrong with the findings of Dr. David Alan Start, the forensic pathologist and medical examiner. Defendant cites instances of Dr. Spitz's expertise and competency being questioned in other cases. Again, defendant presents no evidence actually questioning Dr. Start's competency or medical findings, and his argument consists entirely of speculation concerning the "possibility" of another explanation, which cannot suffice as a basis for obtaining relief. See *Payne*, 285 Mich App at 190.

### III. DEFENDANT'S *BRADY* CLAIM

Defendant argues that there were various pieces of evidence not provided to the defendant, including complete hospital records, microscopic slides, X-rays, hospital admission records, and a pathology report, which he contends were "essential" to impeaching Dr. Start's findings as to timing of injury, manner of death, manner of the infliction of the fatal injury, and possibly the identity of the perpetrator

### A. STANDARD OF REVIEW

"This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial." *Rao*, 491 Mich at 279. "An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions." *Id.* at 279. This Court reviews due-process arguments, such as allegations of a *Brady* violation, de novo. See *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016).

### B. DISCUSSION

"The Supreme Court of the United States held in *Brady* that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting

*Brady*, 373 US at 87. The three components of a *Brady* violation are that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Chenault*, 495 Mich at 150. It is black-letter law that "[t]he government is held responsible for evidence within its control, even evidence unknown to the prosecution, without regard to the prosecution's good faith or bad faith." *Id*. (citation omitted). "[E]vidence under the control of a county medical examiner constitutes evidence within the control of the government for *Brady* purposes in Michigan." *Dimambro*, 318 Mich App at 214. "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Chenault*, 495 Mich at 150.

> To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. This standard does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. The question is whether, in the absence of the suppressed evidence, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence. In assessing the materiality of the evidence, courts are to consider the suppressed evidence collectively, rather than piecemeal. [*Id*. at 150-151 (quotation marks, citations, and alteration omitted).]

Defendant's argument that a *Brady* violation occurred lacks merit. Initially, there is absolutely nothing in the record to suggest that any records were withheld or unavailable to defendant's trial counsel. Defendant does not have a viable *Brady* argument simply by making a general assertion that records "may contain evidence useful for impeachment on cross-examination," because that could exist in every case. *Stanaway*, 446 Mich at 681. Beyond mere speculation, there is no basis for us to conclude that defendant did not receive a fair trial. See *Chenault*, 495 Mich at 150-151.

## IV. EXPERT TESTIMONY

### A. STANDARD OF REVIEW

This Court reviews a trial court's evidentiary decision for an abuse of discretion. *People v Danto*, 294 Mich App 596, 598-599; 822 NW2d 600 (2011). "[T]he determination regarding the qualification of an expert and the admissibility of expert testimony is within the trial court's discretion." *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008) (quotation marks and citation omitted). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Danto*, 294 Mich App at 599. This Court reviews unpreserved errors for plain error affecting substantial rights. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014).

### B. DISCUSSION

The trial court did not abuse its discretion in admitting expert testimony from Dr. Henry concerning the dynamics of child abuse. MRE 702 governs the admissibility of expert witness testimony:

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. [MRE 702.]

MRE 702 incorporates the standards of reliability established in *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 781; 685 NW2d 391 (2004). "[T]he court may admit evidence only once it ensures, pursuant to MRE 702, that expert testimony meets that rule's standard of reliability." *Id*. at 782. "The trial court thus acts as a gatekeeper for expert testimony and has a fundamental duty to ensure that the proffered expert testimony is both relevant and reliable." *People v Bynum*, 496 Mich 610, 624; 852 NW2d 570 (2014).

There is no basis for us to conclude that Dr. Henry based his expert testimony on "junk science." Michigan courts regularly admit expert testimony concerning typical and relevant symptoms of abuse, such as delayed reporting, initial denials, accommodating the abuser, and secrecy. Cf. *People v Peterson*, 450 Mich 349, 373; 537 NW2d 857 (1995) ("We hold that the prosecution may present evidence, if relevant and helpful, to generally explain the common post-incident behavior of children who are victims of sexual abuse."). Moreover, to the extent that defendant argues that Dr. Henry did not specifically cite the academic journals or other sources on which he relied, our Supreme Court has recognized that "[t]here has developed a body of knowledge and experience about the symptomatology of child abuse victimization," *People v Beckley*, 434 Mich 691, 733; 456 NW2d 391 (1990), that "serves only to define the broad range of *possible* physical, psychological, and emotional reactions that a child victim could potentially experience." *Id.* at 722. "[T]he purpose of allowing expert testimony in these kinds of cases is to give the jury a framework of possible alternatives for the behaviors," and "to provide sufficient background information about each individual behavior at issue which will help the jury to dispel any popular misconception commonly associated with the demonstrated reaction." *Id*. at 726. Dr. Henry testified generally about various concepts that could assist the jury with understanding the evidence, and determining facts in issue. See MRE 702. Dr. Henry had the qualifications to provide testimony in this case, a fact defendant does not appear to dispute. Nothing about Dr. Henry's testimony purported to inappropriately apply these principles directly to the facts of the case.

V. MRE 404(B)

Defendant contends that evidence of previous incidents of domestic violence and defendant's violence toward children was improper and highly prejudicial character evidence. Defendant does not cite to particular instances in the record, but only refers generally to the testimony of (1) Giovanni's siblings, (2) Giovanni's mother, and (3) the CPS worker.

## A. STANDARD OF REVIEW

This Court reviews a trial court's evidentiary decision for an abuse of discretion. *Danto*, 294 Mich App at 599. "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*.

## B. DISCUSSION

We conclude that testimony concerning defendant's abusive behavior in the home was properly admissible.

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In order for evidence to be admissible under MRE 404(b)(1), "(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; and (3) the probative value of the evidence must not be substantially outweighed by [the danger of] unfair prejudice." *Danto*, 294 Mich App at 599 (quotation marks and citation omitted; alteration in original). This Court has described MRE 404(b)(1) as an *inclusionary* rule "because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *Id*. (quotation marks and citations omitted). "Evidence is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity." *Id*., quoting *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010). "Notwithstanding this prohibition, however, in cases of domestic violence, MCL 768.27b permits evidence of prior domestic violence in order to show a defendant's character or propensity to commit the same act." *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). MCL 768.27b(1) provides in pertinent part:

> [I]n a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

Although evidence concerning defendant's violent tendencies toward members of his household constituted a type of character or propensity evidence, it was nevertheless admissible under MCL 768.27b because these other acts were relevant to whether defendant physically abused Giovanni. See *Railer*, 288 Mich App at 220-221. Moreover, under MRE 404(b), the evidence of past incidents of child abuse was relevant to prove, at the very least, defendant's intent and the absence of mistake, especially in light of defendant's general denial. See *People v VanderVliet*, 444 Mich 52, 83-84; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994)

("Under Rule 404(b), the defendant's general denial makes presumptively relevant other acts evidence bearing on an issue other than propensity.").

Nor was the evidence more prejudicial than probative so that it should have been excluded under MRE 403. MRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "All relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded." *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). "Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury." *Id*. at 614. Although the contested evidence was damaging because it tended to support the prosecution's theory of the case, it was not unfairly so because of its significant probative value toward proving that defendant physically abused Giovanni shortly before his death, despite defendant's denials.

Affirmed.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jane M. Beckering

-10-